## SCOTT *vs.* BETTS.

Parol proof of notice of non-payment may be given, although the notice was in writing and the defendant has not been called on to produce it at the trial; and this, whether the notice was given by a public notary or a private person.

Where it is the custom of a bank, before presentation, to mark checks on another bank *as paid*, parol evidence that one of such checks has not been paid is admissible. (*a*)

A check given to a person for a particular purpose, and by him transfered as security for the debt of a third person, without the consent or knowledge of the maker, is not passed for a valuable consideration, though taken in good faith.

If the transfer of the check works a payment of a pre-existing debt, or causes some new responsibility to be incurred, or some valuable benefit to be relinquished by the person to whom it is made, the check is to be deemed as purchased for value. *Per* BEARDSLEY, J. (*b*)

ACTION of assumpsit, tried October, 1843, at the New York circuit, before William Kent, C. Judge. On the trial it appeared that the check in suit had stamped across it the words, " Received payment, N. G. Ogden, cashier," and that

---

(*a*) Where the president of a bank, who is the maker of an endorsed note discounted by it, procures a third person, cognizant of the facts, to make a new note of the same tenor and amount, which he indorses and exchanges for his own, and delivers that to the maker of the new note for his security, making entries in the books of the bank indicating that the first note is paid and the second discounted; *held*, that the first note was not paid, but remained in force against both maker and indorser. *The Highland Bank* v. *Dubois*, 5 Den., 558. F. was the maker of a note payable at a bank, upon which S. was indorser. Several days before the note fell due, F. took the check of S., for the amount of the note, to the bank, and offered it in payment of the note,

it was the custom of the Phœnix Bank, of which Ogden was cashier, to thus mark all checks to be presented to another bank, and that the notice of non-payment was filled up and served and signed by a person not a notary, though with his name attached. Parol proof of the contents and service of the notice was received. The defendant moved for a

The account of S. was then overdrawn several thousand dollars, and the cashier declined then to receive the check in payment, but said that he would pin the check to the note, and if, when the note fell due, the account of S. was made good, the check would pay the note—to which F. assented. When the note fell due, S.'s account had not been made good, and nothing was done with either the note or the check; but within two or three days after the note fell due, S. made several deposits with the bank, which were more than enough to meet the check, although not sufficient to make up the deficit in his account. The cashier thereupon charged the check to S. in the books of the bank, and marked and credited the note as paid. S. failed, and the bank then called upon F. to take up the note, alleging that the check of S. had not been paid, and F., without any knowledge of the entries in the books of the bank, gave a new note for the original debt. *Held,* that the first note was paid by the check of S., and that as F. had given the new note in ignorance of the fact that the bank had accepted the check in payment of the first note, such new note was without consideration, and void. *Pratt* v. *Foote,* 6 Selden's notes of cases decided in the court of appeals, April 18, 1854, p. 51; reversing the decision in 12 Barb., 209. A bill was received for collection by the Troy City Bank on the morning of the 19th November, and was then presented to Warren, the drawee, and delivered to him on receiving his check on that bank for an amount exceeding the bill, and the difference between the check and the bill was paid him. The drawee had not at the time sufficient funds in the bank to meet his check, but on the evening of the same day made his account good to the amount of this and other checks drawn during the day, by cash and sight drafts on New York. On the next day he drew further checks on the bank and made his account good on the evening of that day by cash and drafts on New York. The drafts on New York were not paid. *Held,* that the bill was paid. *Commercial Bank of Penn.* v. *Union Bank of New York,* 1 Kern., 203. "By the receipt of the check of Warren, and charging it to him in account and surrendering to him the draft, the same was paid and satisfied. (*Pratt* v. *Foote.*) And if not paid by that transaction, after the account of the drawer of the check was made good as against the check by subsequent deposits, which the law applied to the first debit against the depositor, and which in this case was the check given in fact in payment of the bill in question, the draft was in no sense a valid or subsisting bill, but was paid and satisfied and could not be revived by any subsequent negotiation or dealings of the parties. (*Allen* v. *Culver,* 3 Den., 284; *Webb* v. *Dickinson,* 11 Wend., 62; *Seymour* v. *Van Slyck,* 8 *id.,* 403.)" *Id.,* per Allen, J., p. 214.

(*b*) An innocent holder of negotiable paper, who has received it *in the usual course of trade, for a valuable consideration,* though from a person having no title and no authority to transfer it, will be protected even as against the claim

nonsuit on these and other grounds: 1. That the check had been stamped *paid* by Phœnix Bank, and thus deliberately canceled, without any mistake or deception practiced by defendant. 2. That plaintiff could not recover without proving that the check had been protested by a notary. Which motion the judge overruled, and defendant

of the previous owner. Per Walworth, Ch., and Lott, Sen., in *Stalker* v. *McDonald*, 6 Hill, 93. Otherwise, where it appeared that the paper was received as *security for an antecedent debt* due from the person who made the unauthorized transfer, and the holder neither parted with value on the credit of it, nor relinquished any previous security. *Stalker* v. *McDonald.* So, even had the papers been nominally received as payment. *Id.*, per Walworth, Ch. "In *Coddington* v. *Bay*, 20 Johns., 637, this court did not, so far as I have been able to discover, run counter to any decision which had ever been made in this state or in England previous to that time. For the decision admits that the *bona fide* holder of negotiable paper, who has received it for a *valuable* consideration, without notice or reasonable ground to suspect a defect in the title of the person from whom it was taken in the usual course of business or trade, is entitled to full protection. But that where he has received it for an antecedent debt, either as a nominal payment or as a security for payment, without giving up any security for such debt which he previously had, or paying any money or giving any new consideration, he is not a holder of the note for a *valuable* consideration, so as to give him any equitable right to detain it from its lawful owner. * * * There is no doubt that the cases of *Wardell* v. *Howell*, 9 Wend., 170, *Rosa* v. *Brotherson*, 10 id., 85, *Ontario Bank* v. *Worthington*, 12 id., 593, and *Payne* v. *Cutler*, 13 id., 605, in the supreme court of the state, and of *Francia* v. *Joseph*, 3 Edw. Ch. Rep., 182, before the vice chancellor of the first circuit, follow the decision of this court" (the court of errors) "in the case of *Coddington* v. *Bay.* And they fully establish the principle that to protect the holder of a negotiable security which has been improperly transfered to him in fraud of the prior legal or equitable rights of others, it is not sufficient that it has been received by him merely as a security or nominally in payment of a pre-existing debt, where he has parted with nothing of value, nor relinquished any security upon the faith of the paper thus improperly transfered to him without any fault on his part. I may add that many other decisions to the same effect have been made in this state, in the different courts of law and equity, within the last twenty years; although most of them have not been reported." *Id.*, pp. 95, 6, and 97, 8. Where A. made and lent B. a note, expressly to enable the latter to borrow money from a particular person, and instead of using it for that purpose, B. delivered it to C. as collateral security for a previous debt, C. taking it with knowledge of the circumstances under which it was made; *held*, that the note was not a valuable security in C.'s hands. *Beers* v. *Culver*, 1 Hill, 589. And C., having transfered the note to D., (who also knew the circumstances under which it was given,) upon a promise by the latter to pay the debt of C. against B.; *held*, that the promise was without consideration, and therefore void. *Id.* See further *Youngs* v. *Lee*, 2 Kern., 555.

excepted.. The evidence on the part of the defendant, and charge of the judge as excepted to, will be seen from the the opinion. Verdict for plaintiff, and defendant moves for a new trial on a bill of exceptions.

*J. S. Bosworth,* for defendant.

*S. G Huntington,* for plaintiff.

*By the Court,* BEARDSLEY, J. It is well settled as a rule of evidence that parol proof of notice of non-payment may be given, although the notice was in writing and the defendant has not been called on to produce it at the trial. (1 Phil. Ev. by Cow. & H., 445, 446, note 850. 2d vol., 28, note 100.) There is no difference, in this respect, between a notice given by a public notary and one by a private person. This objection was properly overruled.

The check was drawn by the defendant upon the Chemical Bank, but it was presented for payment by an agent of the Phœnix Bank. It was the custom of the latter, before sending out checks on other banks for payment, to stamp them on their face as paid, as was done with this check, but as payment was refused, this stamp, as in other cases, was erased. It was urged on the part of the defendant that this mark of payment on the face of the check canceled and destroyed it, but the circuit judge held that it did not. It was not pretended that the check had been paid before or after this stamp was placed on it, and we are not called upon to determine how far such a stamp, unexplained, may be evidence of payment. It was clearly subject to explanation, and a satisfactory one was given. The circuit judge was correct in disregarding this objection.

There was no variance between the. check given in evidence and the copy annexed to the declaration. The check was payable to bearer and the plaintiff sought to recover in that character. The stamp of payment on the face of the check, which had been erased, and certain names on its back, were no part of the check, and the statute does not

require that they should appear on the copy served with the declaration. (2 R. S., 352, § 7.)

The objection made at the trial, that the plaintiff could not recover without proving the check to have been protested by a notary, and that the notice given in the name of the notary by his clerk was bad, is not taken in the points submitted on the part of the defendant, and is regarded as abandoned. But it is manifestly unfounded.

The circumstances under which this check was made and passed to the plaintiff, as detailed by the witnesses, were as follows : One Watrous, living in the city of New York, was in the habit of drawing drafts for his own accommodation on the plaintiff who resided at Troy, and which the plaintiff was in the habit of accepting. These drafts were negotiated in New York by J. E. Betts (the father of the defendant) for the benefit of Watrous. On the 3d of October, 1842, Watrous drew on the plaintiff, at one day after sight, for $325, and his draft was accepted by the plaintiff on the 4th of said October. This draft had been negotiated by J. E. Betts for the benefit of Watrous, before the check in suit was made. J. E. Betts was at this period a broker in New York, but he was in bankruptcy and could not keep a bank account, for which reason his son (the defendant) allowed him to keep a bank account in his name, and signed such checks in blank for the use of said J. E. Betts, as were required in the course of his business. There was no particular arrangement between them as to the use of such checks, but they were to be used with prudence, and the course of business was for J. E. Betts to make his deposits of money in the defendant's name, and draw the same out of bank by checks which the defendant signed in blank and left with J. E. Betts to fill up and use as he wanted them. Defendant sometimes signed twenty or thirty checks at a time and left them with J. E. Betts. This check was one thus signed and left with him, and he filled it up and issued it on the 7th October, 1842, although it is dated on the 10th. On the 7th one Keeler, an agent for said Watrous, applied to J. E. Betts for the loan of a check of $325 to Watrous, to be sent to the plaintiff to meet the draft of Watrous for that

sum which the plaintiff had accepted on the 4th, and this check was thereupon lent by J. E. Betts to Watrous for that purpose, it being agreed that Watrous should provide funds to take up said check at maturity. J. E. Betts was reluctant to let Watrous have the check, and told Keeler he considered it a stretch of authority to do so. The check was sent by Watrous to the plaintiff at Troy, on the 7th of October, to meet said draft which was to be paid on the 8th, and at which time it was paid by the plaintiff. Watrous never provided funds to pay the check, having failed on the 9th of October, and it has remained unpaid. Some other circumstances were detailed by the witnesses, but they are not deemed material to the points raised and decided by the judge.

The judge charged the jury that if they believed the plaintiff received this check before it fell due, bona fide and without notice of its misapplication or malapplication, and to be applied on said draft or in reimbursement of his payment thereof, the draft having been paid by him when it fell due, he, being an accommodation acceptor of said draft, was entitled to recover on said check. This was excepted to by the counsel for the defendant.

The counsel for the defendant then requested the judge to charge the jury that if they believed J. E Betts had no authority to use the defendant's check, except to draw out funds deposited by him in bank to the credit of the defendant, the plaintiff could not recover without showing a consideration paid on the credit of said check, and that payment of his previous acceptance for the accommodation of Watrous, after the receipt of said check, would not be a consideration within the meaning of this rule. The judge refused so to charge and the counsel for the defendant excepted.

Both exceptions raise, in substance, the same question, for the latter is but a modification of the former; it presents no new principle. Each assumes that the check was lent by J. E. Betts to Watrous without authority, and that it was unavailable in the hands of the latter. This view was correct so far as respects Watrous; he received the check with notice that it was issued without authority, and, besides,

he promised to pay it when presented. He, therefore, could not have maintained an action upon it against the defendant. Each exception also assumes that the plaintiff neither made an advance of money, nor incurred any new obligation, nor relinquished any right, in consequence of this check being transfered to him. If he paid his own acceptance after the check came to his hands, he did so, not in consideration of the transfer of the check to him, but because he was bound by his previous acceptance to do so If the acceptance had been paid when the check was received by the plaintiff, he held it to reimburse an advance already made. It does not appear to have been received in satisfaction of Watrous's liability to the plaintiff; that was in full force notwithstanding the transfer of the check. Payment of the check to the plaintiff would certainly have extinguished the liability of Watrous, but that consequence did not follow from its mere transfer to the plaintiff as security for what was his due.

Under the charge the jury must have found that the plaintiff received the check without notice that it had been issued without authority, or that Watrous had engaged to pay it when presented, and that the plaintiff was a bona fide holder. They must also have found that the plaintiff paid his own acceptance at maturity, and that he received the check before or after that payment had been made, to be applied, when paid, in satisfaction of the acceptance, or in repayment of what the plaintiff had already advanced to satisfy his acceptance. That the plaintiff was an accommodation acceptor, seems to have been conceded. He took the check without notice and with the rights of a bona fide holder; and the only material question is, did he receive it for what the law deems a valuable consideration? if he did, he is entitled to judgment.

The plaintiff was a creditor of Watrous, by accepting for his accommodation, and, perhaps, by having already paid that acceptance. The legal proposition is the same in either event; he had all the rights of a creditor of Watrous. Under these circumstances Watrous transfers to the plaintiff the check, a negotiable security, not then due, and for the pur-

pose of having the proceeds applied, when received, in satisfaction of such indebtedness. In the hands of Watrous, the check was unavailable, but it would be otherwise when transfered to a bona fide holder for value.

The jury have found that the plaintiff was a bona fide holder; that point is therefore disposed of.

But did he receive the check for a valuable consideration?

He was not a purchaser in the ordinary sense of the term; that is, he paid nothing on the check; made no advance of money or property on receiving it. Had he done so he would have been a purchaser for value and his right incontestable. Upon this point all the authorities agree.

But in my estimation this is not the only mode in which a party may acquire the rights of a purchaser for a valuable consideration. If the paper is received in *payment* and satisfaction of a pre-existing debt; or if, in consideration of its transfer, some new responsibility is incurred, or a valuable benefit relinquished, by the person who receives it, he ought, in my judgment, on every principle to be deemed a purchaser for value. A debt which ought to be paid is canceled by the creditor; a new burthen is assumed, or some valuable advantage is given up. Where, in reason and justice, can be the difference between a purchase in one of these modes, or by a present payment of money? I confess I see none, and although the adjudged cases in this state are not all harmonious, I regard the principle stated as a well settled point in commercial law. (*Swift* v. *Tyson*, 16 Pet., 1; *Bank of Sandusky* v. *Scoville*, 24 Wend., 115; *Bank of Salina* v. *Babcock*, 21 id., 499; *Coddington* v. *Bay*, 20 Johns., 637, Woodworth, J. Same case, opinion and decree of the Chancellor, 5 Johns. Ch., 54. *Payson* v *Coolige*, 2 Gal. R., 233; *Krush* v. *Scribner*, 11 Conn. R., 388.) In the last case the authorities on this subject are collected and ably reviewed by Chief Justice Williams.

It is, however, true that it has been adjudged in this state, that one who receives negotiable paper in *payment* of a pre-existing debt is not a holder for value. (*Rosa* v. *Brotherson*, 10 Wend., 85. See also 12 id., 600, and 14 id., 570.) But this principle is virtually overruled by the later cases in this

court, and is opposed to the general current of authority on the subject.

There is a plain distinction between a transfer of negotiable paper in payment of a precedent debt, and one made merely as security for its ultimate payment. In the latter case no right is relinquished; the debt continues, as before, in full force, neither postponed or extinguished; but in the former, it is gone forever.

In the present case the check was not received as payment, but as security. Scott could have sued Watrous when the check was received, and, for aught that appears in the testimony, that right is still unimpaired. Scott paid nothing for the check, incurred no new obligation and relinquished no right in consequence of receiving it. The judge therefore erred in his charge, and a new trial should be granted.

New trial granted.